UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LAWRENCE ARMSTRONG,

        Petitioner,

v.                                        CASE NO. 08-14961
                                          HONORABLE GERALD E. ROSEN

KENNETH ROMANOWSKI,

        Respondent.

_____/

**OPINION AND ORDER**
**(1) GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT,**
**(2) DISMISSING THE HABEAS PETITION AS TIME-BARRED, AND**
**(3) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

    Petitioner Lawrence Armstrong has filed a habeas corpus petition challenging his state convictions for first-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony (felony firearm). Respondent Kenneth Romanowski argues in a motion for summary judgment that Petitioner failed to comply with the one-year statute of limitations. The Court agrees. Accordingly, Respondent's motion will be granted, and the habeas petition will be dismissed as time-barred.

**I. Background**

    **A. The Charges, Trial, Sentence and Direct Review**

    Petitioner was charged in Wayne County, Michigan with shooting and killing Timothy McClain, aiding and abetting an assault on Daniel Baxter with intent to commit murder, and possessing a firearm during the commission of a felony. The charges arose from an incident that began

> [i]n the early morning hours of November 25, 2000, [when] officers responded to a call of shots fired at 16762 Mansfield in Detroit, which was [Petitioner's] mother's house. The officers soon arrested three individuals nearby who fit the description of the assailants and went back to the house to inform [Petitioner] and his brother, Marcel Smith, that they made the arrest. Later that day, [Petitioner] encountered [Daniel] Baxter and [Timothy] McClain at a party store. After leaving the store, [Petitioner] apparently made a telephone call and got into his car and began to follow Baxter and McClain. [Petitioner] then got out of his car and began chasing McClain, firing shots at him, and ultimately killing him. Meanwhile, two other cars pulled up to the scene and an individual from one of the cars began firing shots, hitting Baxter in the leg.

*People v. Armstrong*, No. 238863, 2003 WL 22299824, at *1 (Mich. Ct. App. Oct. 7, 2003) (footnote omitted). The prosecutor's theory was that Petitioner and his brother Marcel Smith shot Baxter and McClain in retaliation for the shooting at their mother's house earlier in the day. Petitioner did not deny shooting McClain; his defense was that he fired at McClain in self-defense after McClain reached for a gun.

On October 15, 2001, a Wayne County Circuit Court jury found Petitioner guilty of first-degree murder, MICH. COMP. LAWS § 750.316, assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and felony firearm, MICH. COMP. LAWS 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of life imprisonment for the murder and ten to twenty years in prison for the assault. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* opinion, *see People v. Armstrong*, No. 238863 (Mich. Ct. App. Oct. 7, 2003), and on April 1, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Armstrong*, 469 Mich. 1030; 679 N.W.2d 65 (2004) (table). Petitioner did not seek a writ of certiorari in the United States Supreme Court, and the deadline for doing so expired on June 30, 2004.

### B. Post-Conviction Proceedings in State Court

On November 16, 2004, the victim of the assault, Daniel Baxter, recanted his trial testimony in an oral statement made to the attorneys representing Petitioner and his brother in post-conviction proceedings. Baxter informed the attorneys that, contrary to his trial testimony, he did not recognize the people who had shot at him on November 25, 2000, and that Petitioner shot McClain after McClain pulled out a gun and fired at Petitioner. Baxter claimed that he testified differently at trial because gang members had threatened him and his family before trial to persuade him to testify against Petitioner and his brother. He denied being threatened by gang members after the trial.

On June 22, 2005, Baxter testified at an evidentiary hearing in Marcel Smith's case.[1] He claimed that he did not know who shot him on November 25, 2000, that he did not see Marcel Smith during the incident, and that his trial testimony to the contrary was not true. He claimed that a gang of people who were friends with McClain had threatened him in order to make him testify against the defendants at trial. He stated that he ultimately came forward and was testifying differently at the evidentiary hearing because he did not want to see an innocent person locked up for something he did not do.

Baxter also testified that gang members had shot him in the knee before trial to induce him to testify against the defendants and that the prosecutor's office had promised to dismiss a charge of violating probation if he testified at trial. Smith's attorney, however, was unable to verify Baxter's claim that he was treated at Sinai Grace Hospital for the knee injury, and Baxter could not remember how the probation charge was resolved.

---

[1] Petitioner and Smith were tried separately.

On or about June 28, 2005, Petitioner filed a motion for relief from judgment in which he argued that he was innocent of the crimes for which he was convicted. The trial court denied his motion, and the Michigan Court of Appeals denied leave to appeal the trial court's decision "for lack of merit in the grounds presented." *People v. Armstrong*, No. 275003 (Mich. Ct. App. May 24, 2007). On November 29, 2007, the Michigan Supreme Court denied leave to appeal because Petitioner had "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Armstrong*, 480 Mich. 952; 741 N.W.2d 319 (2007) (table).

**C. The Habeas Petition and Motion for Summary Judgment**

On November 28, 2008, Petitioner filed his habeas corpus petition through counsel. He alleges that (1) he is actually innocent of the crimes for which he was convicted, (2) the prosecutor failed to disclose exculpatory evidence about Daniel Baxter, (3) his trial attorney was ineffective for violating the rule of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and (4) appellate counsel was ineffective for failing to assert a claim about trial counsel's *Batson* violation. Respondent argues in his motion for summary judgment that the Court is barred from considering the substantive merits of these claims by Petitioner's failure to comply with the statute of limitations. Petitioner replies that his habeas petition is timely because it was filed within one year of the last state court decision in his case.

**II. Discussion**

**A. The Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), established a one-year period of limitations for habeas petitions filed by state prisoners. *See* 28 U.S.C. § 2244(d). The limitations period runs from the latest of

4

**(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

**(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### 1. Delayed Start to the Statute of Limitations

Direct review of Petitioner's convictions came to an end on June 30, 2004, when the ninety-day deadline expired for seeking a writ of certiorari in the Supreme Court. *Jimenez v. Quarterman*, __ U.S. __, __, 129 S. Ct. 681, 685-86, 172 L.Ed.2d 475 (2009). The Court, however, is required to calculate the start of the limitation period from the latest of four statutorily-specified circumstances. 28 U.S.C. § 2244(d)(1); *Anderson v. Carlton*, 150 Fed. Appx. 499, 500 n.1 (6th Cir. 2005).

The latest triggering event in this case is Baxter's recantation of his trial testimony. Under 28 U.S.C. § 2244(d)(1)(d), the statute of limitations began to run from the date on which Baxter's recantation could have been discovered through the exercise of due diligence.[2]

---

[2] Petitioner's first two claims are based on Baxter's recantation of his trial testimony. Petitioner's third and fourth claims allege ineffective assistance of counsel and are based on earlier events, namely, the trial and the appeal of right. The Court need not analyze whether the third and fourth claims are time-barred because those claims obviously are untimely under 28 U.S.C. § 2244(d)(1)(A) if the first and second claims, which are based on a later event, are untimely under 28 U.S.C. § 2244(d)(1)(A).

Petitioner learned of Baxter's recantation no later than November 16, 2004, when Baxter made a statement under oath to Petitioner's and Marcel Smith's attorneys. The period of limitation began to run on the following day, Fed. R. Civ. P. 6(a)(1)(A), and it continued to run for more than seven months. It stopped running on June 28, 2008, when Petitioner filed his motion for relief from judgment, and it was tolled during the entire time that Petitioner's motion was under consideration in state court. 28 U.S.C. § 2244(d)(2). The limitation period resumed running on November 30, 2007, the day after the Michigan Supreme Court concluded its review of Petitioner's claims. Petitioner then waited almost a year before filing his habeas petition. Because the limitation period ran approximately seven months before Petitioner filed his motion for relief from judgment and almost twelve months after he filed the motion, his habeas petition is untimely.

### 2. Petitioner's Argument

Petitioner alleges that, under 28 U.S.C. § 2244(d)(1)(A), his judgment became final, and the statute of limitations began to run, on November 29, 2007, when the Michigan Supreme Court denied leave to appeal the trial court's denial of his motion for relief from judgment. Petitioner's reliance on § 2244(d)(1)(A) is misplaced because that subsection refers to the date on which the judgment became final by the conclusion of *direct review* or the expiration of the time for seeking such review. The Michigan Supreme Court's decision of November 29, 2007, occurred on state collateral review of Petitioner's convictions. The Court therefore rejects Petitioner's argument that his convictions did not become final until the conclusion of post-conviction proceedings in state court. A conviction is "considered final at the close of the initial direct appellate proceedings," not when state post-conviction proceedings have ended.

6

*McClendon v. Sherman*, 329 F.3d 490, 493-94 (6th Cir. 2003).

### 3. Summary

The statute ran approximately nineteen months: about seven months before Petitioner filed his motion for relief from judgment in state court and almost twelve months after the state courts concluded their review of his motion. The habeas petition therefore is untimely, absent tolling, because the limitation period ran more than twelve months.

### B. Equitable Tolling

### 1. Legal Framework

In appropriate cases, equitable tolling applies to the one-year statute of limitations for habeas cases. *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001). However, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814, 161 L.Ed.2d 669 (2005) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L.Ed.2d 435 (1990)). Courts in this Circuit also consider and balance the following factors when deciding whether equitable tolling is appropriate:

> (1) lack of actual notice of [the] filing requirement; (2) lack of constructive knowledge of [the] filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

*Andrew v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). "Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).

Lack of prejudice to the respondent is not an independent basis for invoking the doctrine

of equitable tolling, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726, 80 L.Ed.2d 196 (1984), and Petitioner has not alleged that he lacked notice or constructive knowledge of the filing requirement. Nor has he shown that he was diligent in pursuing his claims or that some extraordinary circumstance stood in the way of filing a timely habeas petition.

### 2. Actual Innocence

Petitioner does allege that he is actually innocent of the crimes for which he was convicted, and equitable tolling applies where the petitioner makes a credible claim of actual innocence. *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005). A claim of actual innocence must be supported by "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also Souter*, 395 F.3d at 600 (explaining that the actual-innocence exception for time-barred claims is limited to the rare and extraordinary case where a habeas petitioner presents a credible claim of new evidence, which undermines the reviewing court's confidence in the outcome of the trial). "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S. Ct. at 868.

> [I]t bears repeating that the Schlup standard is demanding and permits review only in the " 'extraordinary' " case. *Id.*, at 327, 115 S. Ct. 851 (quoting [*McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 1470, 113 L.Ed.2d 517 (1994)]; see also 513 U.S., at 324, 115 S.Ct. 851 (emphasizing that "in the vast majority of cases, claims of actual innocence are rarely successful"). At the same time, though, the Schlup standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable

8

juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 2077, 165 L.Ed.2d 1 (2006).

### 3. Baxter's Recantation

Petitioner's actual-innocence claim is based on Daniel Baxter's recantation of his trial testimony. At trial, Baxter claimed that Petitioner fired at McClain, who was unarmed, but during post-conviction proceedings Baxter claimed that Petitioner shot McClain after McClain fired a gun at Petitioner.

Baxter's recantation is suspicious because he waited over three years to speak out even though he claimed that he was not threatened after trial and that he did not want an innocent person to be incarcerated for something the person did not do. Recanting witnesses, moreover, are viewed with extreme suspicion. *United States v. Willis,* 257 F.3d 636, 645 (6th Cir. 2001); *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991), *superseded in part on other grounds by* U.S.S.G. § 2D1.5(a).

Furthermore, the trial court found Baxter's recantation testimony incredible. The trial court relied on the following factors in concluding that Baxter was not credible. First, Baxter was adamant at trial that Marcel Smith shot him and that Petitioner, whom he knew all his life, chased and murdered McClain.

Second, there was no question that Smith was present during the shooting incident and that a gun like the one used in the shooting was found at Smith's and Petitioner's home. Third, Petitioner and Smith had a motive for the shooting; they apparently believed that McClain was involved in the shooting of their mother's home earlier in the day.

The trial court also noted that Baxter's recanting statement to the defense attorneys several months before the evidentiary hearing left the impression that Baxter was unsure and inconsistent in his comments. The record supports this finding. A couple of times during Baxter's oral statement to the attorneys, Baxter admitted that his trial testimony was correct and then changed his testimony upon further questioning and stated that his trial testimony was not true. *See* Pet. for Writ of Habeas Corpus, Ex. H, at 5-6, 8.

Baxter's recantation is unpersuasive for an additional reason: it conflicts with Marcus Irvine's trial testimony. Irvine testified that he saw Petitioner talking with McClain outside a party store. Irvine did not hear what was said during that conversation, but when Petitioner went in the store, Petitioner informed a friend who accompanied him that "he was going to die no matter what." Irvine did not know to whom Petitioner was referring when he made that comment, but he did observe that Petitioner and his friends were armed, whereas McClain and Baxter did not have weapons. A short time after the incident at the store, Irvine saw Petitioner with a gun in his hand chasing McClain into a field. Then Irvine heard gunshots, and he observed that Baxter and McClain had been shot.

Irvine's testimony supports Baxter's trial testimony and bolsters the trial court's conclusion that Baxter's recantation of his trial testimony was not credible. The trial court was uniquely qualified to evaluate Baxter's credibility because it had an opportunity to observe Baxter at trial and at the post-conviction evidentiary hearing. This Court, therefore, defers to the trial court's judgment that Baxter's recantation is not credible. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 851, 74

L.Ed. 2d 646 (1983).

Baxter's recantation does not undermine this Court's confidence in the outcome of Petitioner's trial, and more likely than not, the recantation would not cause a reasonable juror to have reasonable doubt about Petitioner's guilt or innocence. Therefore, Petitioner's claim of actual innocence fails.

### III. Conclusion

Petitioner's claims are barred from substantive review by the one-year statute of limitations, and equitable tolling of the limitation period is not warranted. Accordingly, Respondent's motion for summary judgment [Dkt. #5] is **GRANTED**, and the habeas corpus petition [Dkt. #1] is **DISMISSED** as time-barred.

Reasonable jurists would not debate whether the Court's procedural ruling is correct or whether the petition states a valid claim of the denial of a constitutional right. The Court therefore **DECLINES** to issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: February 18, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 18, 2010, by electronic and/or ordinary mail.

s/Ruth A. Gunther
Case Manager